**UNITED STATES v. UNITED STATES FIDELITY & GUARANTY CO.**

**Civ. A. No. 539.**

District Court, E. D. Pennsylvania.

Dec. 10, 1940.

960

J. Cullen Ganey, U. S. Atty., J. Lawrence Grim, Asst. U. S. Atty., Julian R. Eagle and Aaron D. Hockstein, Attys. in Alcohol Tax Unit, all of Philadelphia, Pa., for plaintiff.

Frederick H. Spotts and Pepper, Bodine, Stokes & Schoch, all of Philadelphia, Pa. for defendant.

BARD, District Judge.

This is an action tried without a jury between the United States as obligee, and the United States Fidelity and Guaranty Company as surety, on a bond which was conditioned on the faithful discharge of the principal obligor's duties as a store-keeper-gauger and payment of all fines or costs imposed for defaults as such officer. I make the following special findings of fact:

1. Plaintiff is the United States of America.

2. The defendant is the United States Fidelity and Guaranty Company, a corporation organized and existing under and by virtue of the laws of the State of Maryland, having its chief office and principal place of business in the City of Baltimore.

3. The defendant is and was at all times hereinafter mentioned properly authorized to carry on business in the State of Pennsylvania as a surety company.

4. In and by the laws of the United States, it was provided as follows:

"Appointment and bond

"There shall be appointed by the Secretary such number of storekeeper-gaugers as may be necessary, who shall each take an oath faithfully to perform his duties, and shall give bond, with one or more sureties, satisfactory to the Commissioner, for the faithful discharge of the duties assigned to him by law or regulations; and the penal sum of said bond shall not be less than $5,000, and said bond shall be renewed or strengthened as the Commissioner may require." (R.S. §§ 3153, 3156; Aug. 15, 1876, c. 287, § 1, 19 Stat. 152; Mar. 2, 1929, c. 510, § 1, 45 Stat. 1496; 26 U.S.C.A. Int.Rev.Code § 4010(a).

5. On or about February 1, 1934, one Howard G. Hamilton was duly appointed to the position of storekeeper-gauger under the laws of the United States and the regulations of the Treasury Department and assigned to duty under the direction of the Supervisor of Permits, Bureau of Industrial Alcohol (Now District Supervisor, Alcohol Tax Unit, Bureau of Internal Revenue), District No. 3, Philadelphia, Pennsylvania.

6. On or about February 3, 1934, a bond, Form 48, known as "U. S. Storekeeper-gauger's bond", in writing under seal was executed by Howard G. Hamilton, as principal, and the defendant, United States Fidelity and Guaranty Company, as surety, in the sum of $5,000, whereby they jointly and severally bound themselves to the United States of America in the sum of $5,000, conditioned that if the said Howard G. Hamilton should faithfully discharge the duties of storekeeper-gauger assigned to him and should pay all fines and costs that may be imposed upon him for his acts or defaults, then the obligation would be void, otherwise to remain in full force and effect.

7. Upon the delivery of the bond to the United States and the acceptance and approval thereof, Howard G. Hamilton was assigned to and entered upon the performance of his duties as storekeeper-gauger at the distillery premises of the Siboney Distilling Corporation a duly registered distiller, located at 946–64 North Delaware Avenue, Philadelphia, Pa., which duties, as provided by law and regulations, included the safeguarding of distilled spirits on the distillery premises and the prevention of their illegal removal therefrom.

8. On or about December 6, 1937, and during the continuance of the conditions and agreements provided by his bond, Howard G. Hamilton, while so assigned and on duty at the aforementioned distillery premises, and in the employment of the United States as such storekeeper-gauger, did, in violation of his official duties and the law and regulations, remove and aided in the illegal removal from said distillery premises of certain distilled spirits then and there in his official custody as storekeeper-gauger. The total amount of distilled spirits illegally removed by Hamilton was seventeen gallons of rum, 116-proof, and no more.

9. It was the duty of a storekeeper-gauger, in general, to protect the United States Government, and a part of his duties was to see that no alcohol was permitted to leave the premises without the tax being paid.

10. The tax on seventeen gallons of rum, 116-proof, amounts to the sum of $39.44.

11. The suit has been authorized by the Commissioner of Internal Revenue.

12. Howard G. Hamilton was indicted, tried, pleaded guilty, convicted, and sentenced for the illegal removal of the seventeen gallons of rum.

13. Howard G. Hamilton was dismissed from the service of the United States on May 11, 1937.

14. At the time of his dismissal, there was in the Civil Service Retirement and Disability Fund $757.36, which had been deducted from the salary of Howard G. Hamilton and transferred on the books of the Treasury Department to the credit of that fund.

15. The sum referred to in paragraph 14 was paid to Howard G. Hamilton on March 19, 1938, without the consent of the defendant.

### Discussion.

The major issue is whether this bond is an indemnity bond on which the government can recover only the actual damages sustained, or is a bond on which the government can recover the stipulated amount. The defendant urges that it should be deemed an indemnity bond. The government contends that it should be treated as a contract whereby, on breach thereof, the stipulated amount became due.

The bond was conditioned on honest and faithful discharge of the principal's duties as storekeeper-gauger, and on payment of all fines and costs that might be imposed on him for acts or defaults as such officer. There was a statutory requirement for a bond conditioned on faithful discharge of duties.

If the bond properly can be deemed a contract for liquidated damages, the stated sum can be recovered without regard to the extent of actual damage. United States v. Bethlehem Steel Co., 205 U.S. 105, 27 S.Ct. 450, 51 L.Ed. 731. I am decided, however, that the contract is not one for liquidated damages. This conclusion is not founded on presumed or now apparent disproportion between the stated sum and the actual damages, but on the inclusive nature of the language used. The bond provides that payment of fines and costs, as well as faithful discharge of duties shall be conditions. In light of this, the parties cannot be said to have indicated an intention to stipulate damages by specifying a definite sum, particularly since the specified sum was but the statutory minimum.

Generally, the courts construe the sum mentioned in a bond as a penalty, considering it merely as security for the damage actually sustained by the breach of the condition, and they limit the recovery to an amount compensatory therefor, unless the stated sum is clearly intended as stipulated damages. Illinois Surety Co. v. United States, 2 Cir., 229 F. 527. However, where a bond is given to a public body, as a condition of license or other privilege, or conditioned on compliance with law, the full penalty of such bond may be recovered for a breach thereof, in the absence of express or implied provisions to the contrary in the statute or ordinance which prescribed the bond, or in the bond itself. Clark v. Barnard, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780; United States v. Dieckerhoff, 202 U.S. 302, 26 S.Ct. 604, 50 L.Ed. 1041; The S. Oteri, 5 Cir., 67 F. 146.

It is true in most cases, where the bond is given to the state or government to compel obedience to its laws, no definite loss could be truly averred or definitely proved. Though the instant bond is not patently one to enforce obedience to the laws of the United States, it may be, without deciding the point, that, if the bond had followed the terms of the statute, the government might have recovered the penal sum. See O'Kane v. Lederer, D.C., 4 F.2d 418. However, in

view of the fact that additional and unrequired provisions were included in the bond now before the court, I deem an examination of the contract warranted.

■ Where there is a necessity for construction, regard may be had for the entire statute, the governmental regulations framed to carry out the statute, and the language of the bond. O'Kane v. Lederer, supra. In this instance resort to the particular statute does not greatly facilitate the construction, as it merely says that the bond shall be "for the faithful discharge of the duties assigned to him by law or regulations; and the penal sum of said bond shall not be less than $5,000, and said bond shall be renewed or strengthened as the Commissioner may require." The storekeeper-gauger is provided to facilitate and, in a sense, effect the collection of internal revenue forthcoming from distillers. Some significance might be attached to the provision that the penal sum can be increased at the option of the commissioner. That is, this provision indicates that the commissioner may raise the amount where such is deemed necessary to safeguard the United States' interests involved.

Resort to the related provisions demonstrates that there are specific penalties which can be imposed on storekeeper-gaugers. For fraudulent inspection, gauging, or proof, a storekeeper-gauger must pay a penalty of $1,000, and be fined from $500 to $5,000, and imprisoned not less than three months or more than three years. 26 U.S.C.A. Int.Rev.Code § 4021(b). For unlawful removal of distilled spirits from a warehouse a fine of $200 to $5,000 and imprisonment for three months to three years shall be imposed. 26 U.S.C.A. Int. Rev.Code § 2913.

The language of the bond, though more inclusive than that of the statute, parallels the statute's words in conditioning its obligation on honest and faithful discharge of duties. In addition, it includes a declaration of a condition that all fines and costs imposed on the storekeeper-gauger, as such, be paid. This recommends a construction that the sum was designed to be sufficient to guarantee satisfaction of normally expected losses and fines, rather than to operate as a defined penalty or forfeiture. This construction is supported by the presence of penalties above noted severe enough, themselves, to deter employees from violations.

■ Recurring now to the specific question concerned, I cannot but conclude that the amount named in the statute and bond represents security for, or a limit, and not a measure, of liability. There was no license or privilege conferred on the principal, who, although a private citizen, was "bonded" as a civil servant, nor was he otherwise specifically enjoined to comply with the law.

I find support for my construction of and conclusions concerning the instant bond in the case of United States v. Zerbey, 271 U.S. 332, 46 S.Ct. 532, 70 L.Ed. 973. The similarity of the conditions of this bond and the one there involved justifies a resort to the decision and opinion of the Supreme Court in that instance.

■ There is a further question. That is, whether the defendant is discharged from liability to the extent of $757.36, the amount of money belonging to Hamilton which the government held on the date of Hamilton's dismissal and subsequently paid to him, instead of applying it to obligations owing the government. The plaintiff urges that the government was without the power to withhold the money, which represented salary deductions in the Civil Service Retirement Fund, and which was properly payable to Hamilton when he was dismissed. True, the government cannot allow an attachment or assignment of the deductions, nor a levy against the same by private parties. Furthermore, it can well be questioned whether the United States could, for any obligation owing to it, attach the retirement fund credit of one of its employees who' was continuing in its employment. But, when an employee has been dismissed, and the portion contributed by him is payable to him, I am decided that a different rule governs, that the United States can withhold an amount equal to the arrearage. There then remained no bar to the application of this amount to the indebtedness of Hamilton to the United States. To these facts can be applied the recognized principle that a release of a fund or other security for satisfaction of the principal debtor's obligation discharges the surety pro tanto. Taylor v. Continental Supply Co., 8 Cir., 16 F.2d 578; Southern Pac. Co. v. Globe Indemnity Co., 2 Cir., 21 F.2d 288.

### Conclusions of Law.

1. The United States is entitled to recover only the actual damages sustained.

2. The defendant surety is discharged from liability to the extent of the amount of money belonging to Hamilton which the United States held on the date of Hamilton's dismissal and subsequently paid to him.

3. Judgment should be entered for the defendant.

So ordered.